## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN FAMILY HOME INSURANCE COMPANY, as Subrogee of Adrian Biesecker,

                    Plaintiff,

    v.

MCLAREN AUTOMOTIVE, INC., and KRAUSE FAMILY MOTORCARS, LLC,

                    Defendants.

Docket No. 2:21-cv-04016-JDW

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANT KRAUSE FAMILY MOTORCARS, LLC

Plaintiff, American Family Home Insurance Company as subrogee of Adrian Biesecker, hereby opposes the motion to dismiss filed by Defendant Krause Family Motorcars, LLC's ("Krause").

## I.  INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff's case against Krause is straightforward.  As alleged in the Complaint, Krause agreed to perform paid repair work for a customer in Pennsylvania, a Pennsylvania resident.  *See* Compl. at ¶¶ 1, 13-22.  It is then alleged to have delivered the vehicle directly into Pennsylvania, to the Pennsylvania resident.  *Id*. at ¶ 22.  Krause also communicated directly with the Pennsylvania resident during the entire time that it was working on his vehicle.  *Id*. at ¶¶ 19-20.  Krause's negligent work on the vehicle became apparent shortly after the vehicle left their hands and arrived in Pennsylvania—it exploded into flames less than one week after the car arrived in the state, causing hundreds of thousands of dollars worth of property damage *in* Pennsylvania *to* a Pennsylvania resident.  Krause purposefully directed its activities at a Pennsylvania resident

1

and purposefully availed itself of the benefit of commerce in Pennsylvania by agreeing to a contract to perform work for a Pennsylvania resident, specific work by which Krause then caused tortious damage in Pennsylvania (again to a Pennsylvania resident).  As Plaintiff specifically alleged, based on these facts, Krause is "subject to this Court's personal jurisdiction with respect to this action."  *Id*. at ¶ 7.

## II.   THERE IS PERSONAL JURISDICTION OVER KRAUSE IN PENNSYLVANIA BECAUSE KRAUSE COMMITTED A TORT IN PENNSVYLVANIA.

### A.   Federal Personal Jurisdiction Under Pennsylvania's Long-Arm Statute

A federal court can rely on the long-arm statute of the state in which it sits to exercise personal jurisdiction over a non-resident defendant as long as such exercise does not offend "traditional conceptions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (citations and quotation marks omitted).  The Pennsylvania long-arm statute confers jurisdiction over defendants outside of Pennsylvania for "Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth."  42 Pa. C.S.A. § 5322(a)(4). The law further provides that a court's jurisdiction under the statute shall extend "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b).

A forum's exercise of jurisdiction over an out-of-state defendant is proper "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.  *Burger King*, 471 U.S. at 472 (citations and internal marks omitted).  "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be

considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.  *Id*. at 476, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  "Thus courts in appropriate cases may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  *Burger King*, 471 U.S. at 477 (citation and internal marks omitted).  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id*.

**B.    Pennsylvania's Long-Arm Statute Confers Jurisdiction Over Krause Because Its Negligence Caused a Tortious Injury in the Commonwealth.**

As Plaintiff alleges in its Complaint, Krause is "subject to this Court's personal jurisdiction" by virtue of agreeing to and benefitting from a contract to perform paid work on a vehicle for a Pennsylvania customer (Plaintiff's insured) while communicating with the customer in Pennsylvania about the work, all the while knowing that the vehicle would be shipped to the customer in Pennsylvania when the work was complete (and knowing that any damage from any negligent work would be felt in Pennsylvania).  When the work was complete, Krause did in fact send the car to the customer in Pennsylvania (and it promptly blew up in Pennsylvania).  Compl. at ¶¶ 7, 18-23.  This conduct amounts to a direct action aimed at a Pennsylvania resident and a prolonged purposeful availment of the privilege and benefit of performing work for a Pennsylvania resident.  When Krause's (negligent) work caused a tortious injury in Pennsylvania to the Pennsylvania customer (along with the Pennsylvania gas station where the car exploded), jurisdiction under Pennsylvania's long-arm statute was cemented.  Krause's prolonged

purposeful contact with Pennsylvania is more than a sufficient basis upon which this Court can exercise jurisdiction over Krause in a case that arose *solely* from that purposeful contact. "Even a single purposeful contact is sufficient to satisfy the due process requirement of 'minimum contacts' when the cause of action arises from the contact." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

In *Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110 (1992), the Pennsylvania Supreme Court held that the state's long-arm statute conferred jurisdiction over an out-of-state defendant based on a tort committed by the defendant in connection with a single transaction (sale of private residence), finding that the exercise of jurisdiction satisfied both the long-arm statute and constitutional due process because the defendant "purposefully directed their activities" at residents of Pennsylvania by entering into a contract to sell real estate located in the state.[1] *Id*. at 17, 1116. Likewise in this case — Krause purposefully directed its activities at a resident of Pennsylvania by accepting a contract to perform work on the resident's car, communicating with the resident in Pennsylvania, then physically placing the car on a truck to be delivered to Pennsylvania where it promptly exploded (in Pennsylvania).

In *Giusto v. Ashland Chem. Co*., 994 F. Supp. 587, 592 (E.D. Pa 1998), the court held that personal jurisdiction was properly exercised under Pennsylvania's long-arm statute over an out-of-state defendant based on defamatory statements made in a single affidavit. The court concluded that the "principle of fair play and substantial justice is observed" because the defendant "was aware that the affidavit would end up in Pennsylvania," so "it would not be unfair for her to expect to be hailed into court in Pennsylvania." *Id*. Likewise in this case —

---

[1] Decisions of the Pennsylvania Supreme Court on the issue of personal jurisdiction are properly considered because the reach of Pennsylvania Long-Arm Statute is "coextensive with the due process clause of the United States Constitution." *Giusto v. Ashland Chem. Co*., 994 F. Supp. 587, 590 (E.D. Pa 1998).

Krause worked on a car for a Pennsylvania customer that it knew would end up in Pennsylvania. When that car exploded shortly after leaving Krause's hands, it would certainly be fair for Krause to expect to be hailed into court in Pennsylvania. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction. *Burger King*, 471 U.S. at 476, citing *McGee*, 355 U.S. at 223.

### C. The Balance of Interests in this Case Weigh in Favor of Exercising Jurisdiction Over Krause.

As quoted above, *Burger King* counsels a weighing of the interests of the plaintiff and the forum state in cases were (as here) the defendant purposefully established minimum contacts with the forum state. *Burger King*, 471 U.S. at 477. In this case, Krause's negligence caused an expensive automobile to explode at a Pennsylvania gas station shortly after leaving Krause's hands, causing tremendous monetary damage (and only narrowly avoiding injuring or killing two Pennsylvania residents in the car). In such case, Plaintiff (standing in the shoes of the Pennsylvania resident who owns the car) and Pennsylvania both have a strong interest in having Krause's negligence adjudicated in the state (where 100% of the injury was felt). To defeat jurisdiction in such case, Krause "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Not only has Krause not presented a compelling case that exercising jurisdiction over it would be unreasonable, the one that it did present misstates important facts and omits others.

In support of its motion, Krause submitted an affidavit by its managing partner Brandon Saszi. With regard to the subject transaction (the service of Mr. Biesecker's car), Ms. Saszi stated: "Defendant Krause had no relationship whatsoever with Mr. Biesecker in terms of sale or service of the vehicle." Krause Exhibit B at ¶ 10. That statement is simply incorrect.

Throughout the time that Krause had his vehicle in its possession and were working on it,

Krause communicated directly with Mr. Biesecker in Pennsylvania to detail their progress on the work, and to tell him when he could expect to have his car delivered to him in Pennsylvania. *See* concurrently-filed Declaration of Adrian Biesecker at ¶ 3 and Exs. 1 and 2. The entire time that Krause was working on the car, they knew that the "customer" for whom they were doing the work was Mr. Biesecker (a Pennsylvania resident) and that the car was going to be shipped directly from Krause's facility in Atlanta to Mr. Biesecker's residence in Pennsylvania as soon as the work was completed. *See* concurrently-filed Declaration of Jeremy Ory at ¶¶ 3-4 and Ex. 1, Biesecker Decl. at Ex. 1 (bill of lading showing Krause/Motorcars of Atlanta as the origin and Mr. Biesecker's Pennsylvania residence as the destination).

Mr. Saszi further states in his affidavit: "The Repair Order identifies the original owner as the customer and not Mr. Biesecker." Krause Exhibit B at ¶ 8. The implication of this statement is that Krause did not know that Mr. Biesecker was the customer for whom they were performing their work, or that the vehicle was going to be transported to Mr. Biesecker in Pennsylvania. Tellingly, Mr. Saszi does not come out and simply state those facts; he dances around them. Presumably that is because Krause ***did*** in fact know that Mr. Biesecker was the customer, and Krause ***did*** know that his car that they were servicing (and receiving money for working on) was heading to Mr. Biesecker in Pennsylvania when they were done servicing it. *See* Ory Decl. at ¶¶ 3-4 and Ex. 1, Biesecker Decl. at Ex. 1 (bill of lading). Krause's employees were personally responsible for tendering the car that Krause had worked on to the transport company for delivery to Pennsylvania (shortly before the car exploded in Pennsylvania). Biesecker Decl. at Ex. 1 (bill of lading).

Based on the facts of this case (including the above facts that Krause omitted to address in its motion), the exercise of jurisdiction over Krause, specifically, for taking a contract to work on a car for a Pennsylvania customer, communicating with the customer in Pennsylvania, and

helping to transport the car to Pennsylvania before it exploded in, and caused injury in, Pennsylvania, is authorized by Pennsylvania's long-arm statute, and is consistent with the due process requirements of the United States Constitution.  And, based on Krause's deficient motion, it cannot be reasonably argued that Krause has presented "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Accordingly, this Court should exercise jurisdiction over Krause in this case.

III.   **IF THE COURT DOES NOT FIND SUFFICIENT BASIS TO ASSERT JURISDICTION OVER KRAUSE BASED ON THE PRESENT FACTS, PLAINTIFF REQUESTS LEAVE TO CONDUCT LIMITED DISCOVERY ON THE JURISDICTIONAL ISSUE.**

As explained above, the facts of this case justify the exercise of jurisdiction over Krause, specifically, the exercise of specific jurisdiction based on Krause's significant forum contact in this case, including the commission of tortious injury in the state.  If the Court disagrees, Plaintiff respectfully requests that it be allowed to conduct limited discovery on the specific issue of general jurisdiction, namely, the extent of Krause's contacts with the Commonwealth of Pennsylvania.  *See Kyko Global, Inc. v. Bhongir*, 807 Fed. Appx. 148, 152-153 (3rd Cir. 2020) (affirming that the District Court has broad discretion to allow discovery for the purpose of determining personal jurisdiction); *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 986, 992 (2003) (confirming that a plaintiff's burden of establishing jurisdiction is lowered in the absence of jurisdictional discovery being allowed).

In this case, if the Court were to decide that Plaintiff has not already established specific jurisdiction over Krause, discovery is further warranted because Krause's own affidavit opens the door to it maintaining sufficient contacts with Pennsylvania to establish general jurisdiction, specifically, the sale and service of motor vehicles for Pennsylvania residents and customers.  In the affidavit of Brandon Saszi, he states that "Krause conducts all business related to sales and

service of motor vehicle *from* its principal place of business in Atlanta, Georgia."  Krause Ex. B

at ¶ 6; emphasis added.  However, Mr. Saszi is silent on the number and value of cars that

Krause sells and delivers *to* residents *in* Pennsylvania. He is also silent on whether Krause has

serviced any cars for Pennsylvania residents beyond Mr. Biesecker's car in this case.  (Based on

Mr. Saszi's silence on these issues, it is safe to assume that Mr. Biesecker was not Krause's only

Pennsylvania customer.)  Accordingly, the circumstances and equities of this case weigh heavily

in favor of allowing Plaintiff to conduct limited discovery on the issue of Krause's business

contacts with Pennsylvania, were the Court to decide that Plaintiff has not already established

jurisdiction over this defendant.

## IV.    THE ECONOMIC LOSS DOCTRINE DOES NOT BAR PLAINTIFF'S CLAIMS AGAINST KRAUSE.

As an alternative basis for its motion, Krause raises the economic loss doctrine.  Krause

misapplies the doctrine, and it fails to cite the dispositive Supreme Court of Pennsylvania case on

the issue.  The economic loss doctrine does not bar any of Plaintiff's claims.

In its memorandum, Krause asserts that "under Pennsylvania law, a plaintiff cannot

maintain a tort action premised on the breach of a legal duty that arises solely from a contract."

Krause Mem. at p. 7.  They further assert that "any alleged duty forming the basis of a

[negligence] claim would arise only due to contracts between the parties."  *Id*.  The fatal error in

Krause's argument is that there is no contract between Plaintiff and Krause (and Plaintiff's claim

is not based on any contractual duties).  Plaintiff sued Krause based on common law negligence.

*See* Compl. at ¶¶ 27-33.  The Supreme Court of Pennsylvania case on this issue that Krause fails

to cite is *Dittman v. UPMC*, 649 Pa. 496, 500 (2018).  In that case the court held that "under

Pennsylvania's economic loss doctrine, recovery for purely pecuniary damages is permissible

under a negligence theory provided that the plaintiff can establish the defendant's breach of a

legal duty arising under common law that is independent of any duty assumed pursuant to contract."

As Plaintiff alleges in its Complaint, "Krause had a professional duty to exercise the level of skill and care appropriate for a licensed dealership, and take all reasonable and necessary steps to prevent the Subject Vehicle from presenting a dangerous fire hazard upon the completion of its work."  Compl. at ¶ 27.  The negligence claim is based solely on Pennsylvania's common law of negligence.  The Complaint does not allege any contract between Plaintiff (or its insured) and Krause, nor any contractual duty owed by Krause to Plaintiff (or its insured).  The economic loss doctrine does not bar Plaintiff's claims against Krause.

**V.      PLAINTIFF'S CLAIM UNDER PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW IS PROPER BECAUSE IT ALLEGES A TORT THAT OCCURRED IN PENNSYLVANIA AND INJURED A PENNSYLVANIA RESIDENT.**

For its final argument, Krause asserts that Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law fails "as a matter of law" because "Plaintiff has not pled sufficient facts to state a claim upon which relief can be granted.  Krause Mem. at p. 8.

As explained in detail herein, in its Complaint Plaintiff alleges that Krause committed a tort in Pennsylvania that injured a Pennsylvania resident by negligently performing repairs on the resident's vehicle before sending to Pennsylvania.  Plaintiff alleged that this specific conduct on the part of Krause violated the UTPCPL, specifically 73 Pa. Const. Stat. Ann.§ 201-2(4). Compl. at ¶¶ 53-57.  These allegations are sufficient to support a claim under the UTPCPL.

As the Supreme Court of Pennsylvania recognized in *Danganan v. Guardian Prot. Servs.*, 645 Pa. 181, 186-187 (2017), the scope of the UTPCPL covers "Pennsylvanians who are victimized by out-of-state operations."  Plaintiff who, for purposes of this action stands in the shoes of its insured (a Pennsylvania resident), has alleged that its insured (a Pennsylvania

resident) was injured by the out-of-state operations of Krause in the form of its faulty repairs to a car that it knew was going to be transported into the state.  Krause has cited no case in which a UTPCPL claim was dismissed as against an out-of-state defendant who committed a tort of the nature alleged in this case which caused injury to a Pennsylvania resident.  Plaintiff has alleged sufficient facts to support its UTPCPL claim.  *See In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 152726, *32 (E.D. Pa. 2017) (agreeing that a PA plaintiff has standing to assert a UTPCPL claim against an out-of-state defendant).  Plaintiff, standing in the shoes of its insured who is a Pennsylvania resident who was injured by a tort committed in Pennsylvania by Krause, has sufficiently pled its claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, for the reasons herein and in the concurrently-filed declarations, Plaintiff American Family Home Insurance Company as subrogee of Adrian Biesecker respectfully requests that the Court deny Defendant Krause Family Motorcars, LLC's motion to dismiss in its entirety.  If the Court does not deny the motion in its entirety, Plaintiff respectfully requests and moves for leave to conduct limited discovery on the issue of the Court's jurisdiction over this defendant, and grant leave for Plaintiff to amend its Complaint based on the information discovered.

Respectfully submitted,

PLAINTIFF AMERICAN HOME INSURANCE COMPANY
By its attorneys,

_____
Patrick C. Timoney
**Devine Timoney Law Group**
Veva 14 Suite 404
1777 Sentry Parkway West

10

Blue Bell, PA 19422
Phone: 610-400-1970
Fax: 610-850-9994
ptimoney@devinetimoney.com

Marie Cheung-Truslow (admitted *pro hac vice*)
**Law Offices of Marie Cheung-Truslow**
Main Number: (617) 777-4748
Fax Number: (617) 553-1940
marie@cheungtruslowlaw.com

Office Address:
101 Arch Street, 8th Floor
Boston, MA 02110

Mailing Address**:**
19 Tobisset Street
Mashpee, MA 02649

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AMERICAN FAMILY HOME INSURANCE
COMPANY, as Subrogee of Adrian Biesecker,

                    Plaintiff,

      v.

MCLAREN AUTOMOTIVE, INC., and
KRAUSE FAMILY MOTORCARS, LLC,

                    Defendants.

Docket No. 2:21-cv-04016-JDW

## DECLARATION OF ADRIAN BIESECKER

Pursuant to 28 28 U.S.C.§ 1746, I, Adrian Biesecker, declare as follows:

1.      I am over the age of eighteen.  I have personal knowledge of the facts stated herein.

2.      On March 23, 2021, I purchased a 2021 McLaren 765LT Coupe bearing VIN SBM14RCAXMW765597 (the "Vehicle") from Motorcars of Jackson.  When Motorcars of Jackson discovered some issues with the Vehicle that needed repair, they sent the Vehicle to Motorcars of Atlanta in Atlanta, Georgia, to perform the repairs.

3.      Throughout the time that the Vehicle was at the Motorcars of Atlanta facility being worked on, I was in direct contact with Isaac Robles, a Motorcars of Atlanta employee, about the repair work.  As part of our communications, I sent dozens of text messages to Mr. Robles from my home in Pennsylvania, and he sent dozens of text messages to me in Pennsylvania.  Attached hereto as Exhibit 1 is a true and correct screen-print of my text exchanges with Mr. Robles concerning the Vehicle.  My texts are the ones on the right of the

page; the texts on the left are from Mr. Robles.

4.      After Motorcars of Atlanta completed their work on the Vehicle they presented it to the transport company for transport directly from their facility in Atlanta to my home in Ambler, Pennsylvania.  Attached hereto as Exhibit 2 is a true and correct copy of the Bill of Lading for the transport of the Vehicle, which shows the transport origin as Motorcars of Atlanta's address and the destination as my home in Ambler, PA.  My street address and phone number have been redacted in order to protect my personal information.

I declare and certify under the penalty of perjury that the foregoing is true and correct.

Executed on October  28 , 2021, in _____ Ambler, PA _____ .

Adrian Biesecker

2

# EXHIBIT 1

Text Message
Mon, Apr 5, 12:13 PM

Adrian this is Isaac from McLaren Atlanta. I got one of the parts here but the second part doesn't show a tracking # yet. We tried to contact the UK but they been  closed since Friday until tomorrow because of the Holiday.

Bummer, can they send DHL express?

Well it will be great if we could talk to someone. We order this VOR witch it means that they need to send this on priority.

I really want to get the car this week

I really want to get it out of my shop, haha I got way to many cars that need to hit my shop.

Can I help?  Can I pay for expedited shipping to get parts ASAP?

Well we think they been sent already but since the warehouse in the UK is closed we can't get a tracking # at least until tomorrow.

Ok, let's hope so!

I will call you tomorrow to see what you find out

Tue, Apr 6, 9:23 AM

Hey Isaac, did the other part ship?

Tue, Apr 6, 10:51 AM

So the tracking is showing to get here on the 8th. I'm sorry about that, I was doing my best to have it back to you before this week.

If you get it on the 8th, can it be picked up the next day?

Tue, Apr 6, 2:12 PM

I'd like to schedule pick up on the car for Friday afternoon

Tue, Apr 6, 3:17 PM

I'm like 80% sure that yes it will be possible but is hard to tell.

Ok, we will schedule for Friday afternoon. If I can't get the carrier there on Friday, and the car gets done, can we schedule for Saturday?  I assume someone will be there

Yes I have someone here that can help.

Awesome, I'll let you know what we find

Wed, Apr 7, 2:51 PM

Isaac, we have a carrier lined up for Friday who will go straight from you to me.  Let's push to get the car ready by noon on Friday!  Thanks a ton!!

Wed, Apr 7, 4:58 PM

Ok I will contact you tomorrow before 12:00pm.

Thu, Apr 8, 9:01 AM

So McLaren just screw us over. They sent the wiring harness but the one that we have here has a connector for just one fuel pump but this car has two. The 720 only has one so they sent the one for the 720 instead of the 765. I was so exited to text you and let you know that we got the part here but as soon as the tech got the part he noticed it was wrong.

So can they send the right one next day?

Someone there can authorize sending it via next day transit so you have it tomorrow

So that is what we are hopping for. We should have a live tracking # in a few hours.

Understood, but can someone confirm that they have sent

next day delivery? I need to know vs hoping

What I don't want is for there to be 3-4 day delivery

That is what we requested.

Ok

Thu, Apr 8, 10:34 AM

Any tracking?

Not yet I will let you know. But even if I do the car won't be done until next week.

Understood, but the same carrier can pick up Tuesday. I'm rescheduling them for Tuesday.

Got it. Trust me I will keep you posted as soon as I get updated.

Thu, Apr 8, 2:15 PM

Did you get tracking?

So it will leave tomorrow per the warehouse in the UK. We ask why and according to them they are one day behind on orders. So honestly Tuesday is also looking really slim.

Is it coming next day?

I think we keep Tuesday and work hard to meet it. McLaren can send it Saturday delivery if they are sending it tomorrow, and you should have it for install Monday morning first thing. I'm getting irritated at their delays.

Please confirm with me that they are sending for Saturday delivery. If you would like, they can call me and deal with an unhappy customer.

I know you are irritated and I know you want the car now but even if they send this next day it won' t be here until Monday or Tuesday. Plus sometimes orders get stock in

Isaac, I use to ship things all over the world.  They can ship this for Saturday delivery, believe me, it's possible.  It's the least they can do given how long this new car has been not in my possession

Mon, Apr 12, 9:33 AM

Eta is showing tomorrow but is actually on the Smyrna warehouse which is only 30 minutes away from us.

Can someone go get it today?

We have to wait until they get delivered from the warehouse. Plus my tech is finishing another car for the other advisor. But as soon as the part gets here we will be on it.

Are you expecting it tomorrow or later today?

And what time does it arrive in the morning?  Is it possible to have the car picked up at 5 tomorrow?

Tracking # is showing tomorrow but I thing it might be this afternoon. I thing the car will be running tomorrow afternoon.

Ok, I will schedule them to pick up tomorrow afternoon

Tue, Apr 13, 10:19 AM

So part is with delivery truck right now. I'm sweating right now.

Fingers crossed

Tue, Apr 13, 12:57 PM

Did the part come?

It keeps showing in route here

Tue, Apr 13, 3:15 PM

Now?

Part just got here 20 minutes ago. I honestly we need a miracle to get this done.

What time was the company trying to pick up? I am working hard on this.

It will be tomorrow, and most likely afternoon

Ok I'm still trying to finish tonight so I can get it clean in the morning.

Between noon and 4

Awesome

I appreciate all your efforts, I really do

Wed, Apr 14, 10:13 AM

Car is running great brother.

Awesome!!!

So happy

# EXHIBIT 2

**DELIVERY BY DELIVERY INC**

561 w 143 street Apt 54
New York, New York 10031
Phone: 9295051890
Email: deliveryordersbox@gmail.com

# BILL OF LADING / VEHICLE INSPECTION REPORT

**LOAD ID: MP**

| ORIGIN | DESTINATION |
|---|---|
| MotorCars of Atlanta<br>7865 Roswell Rd NE<br>atlanta, GA 30350<br>**Contact: Isaac / Luc - Service Department**<br>Phone: (877) 411-3593, | James Adrian Biesecker<br><br>ambler, PA 19002<br>**Contact: James Adrian Biesecker**<br>Phone: |

| VIN<br>**SBM14RCAXMW765597** | Year / Make / Model<br>**2021 Mclaren 765lt** | Type<br>**Sedan** | Color | Odometer<br>**145** |
|---|---|---|---|---|

Inspection notes:

BR–Broken
CH–Chipped
CR–Cracked
D–Dented
F–Faded
FF–Foreign Fluid
FT–Flat Tire
G–Gouge
HD–Hail Damage
LC–Loose Contents
M–Missing
MD–Major Damage
MS–Multiple Scratches
O–Other
PC–Paint Chip
R–Rubbed
RU–Rust
S–Scratched
SC–Scuffed

**NO INSPECTION DAMAGE MARKINGS**

CR Circles — pickup damages;  CR Rounded rectangles — delivery damages;

See inspection photos and details: **https://bol.superdispatch.com/WKenjbZa45Z1B5lDzpzoeGqja**

| Notes: | Notes: |
|---|---|
| **I agree with the Driver's assessment of the condition of this vehicle.**<br><br>Origin Signature / Apr 14, 2021 / Isaac Robles | **Vehicle received in good condition except as noted above.**<br><br>Destination Signature / Apr 15, 2021 / Asrian Biesecker |
| Driver Signature / Apr 14, 2021 / Ievgen Chepurniak | Driver Signature / Apr 15, 2021 / Ievgen Chepurniak |

Powered by **Super Dispatch**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN FAMILY HOME INSURANCE
COMPANY, as Subrogee of Adrian Biesecker,

               Plaintiff,

      v.

MCLAREN AUTOMOTIVE, INC., and
KRAUSE FAMILY MOTORCARS, LLC,

               Defendants.

Docket No. 2:21-cv-04016-JDW

**DECLARATION OF JEREMY ORY**

I, Jeremy Ory, do hereby declare as follows:

1.      I am over the age of eighteen and have personal knowledge of the facts herein.

2.      I am currently employed by Motorcars of Jackson in Jackson, Mississippi. I was involved in and have personal knowledge of the sale of a 2021 McLaren 765LT Coupe bearing VIN SBM14RCAXMW765597 (the "McLaren") to Adrian Biesecker on March 23, 2021.

3.      Motorcars of Jackson discovered some issues with the vehicle that needed repairs. Since Motorcars of Jackson is not an authorized McLaren dealer or servicer, we engaged Motorcars of Atlanta in Atlanta, Georgia, to perform the repairs prior to the delivery of the vehicle to Mr. Biesecker. After the repairs were completed, the vehicle was to be shipped directly from Motorcars of Atlanta's facility in Atlanta to Mr. Biesecker's residence in Pennsylvania.

4.      Attached hereto as Exhibit 1 is a true and correct screen-print of a text message exchange I had with Isaac Robles, an employee of Motorcars of Atlanta. The lighter-colored texts are those sent by Mr. Robles; the darker color texts are mine. The texts concern the repair work being performed by Motorcars of Atlanta for the "new customer" Adrian Biesecker before the car was shipped directly from Motorcars of Atlanta's facility to Mr. Biesecker in

1

Pennsylvania.

I declare and certify under the penalty of perjury that the foregoing is true and correct.

Executed on October _28_, 2021, in _Hinds County, MS_____.


_____
Jeremy Ory

EXHIBIT 1



11:01

◀ Contacts

Isaac ›

Thu, Mar 18, 2:54 PM

Isaac

Isaac Robles McLaren Service

Mon, Mar 22, 3:34 PM

He is good for tomorrow send me the info and we will make it work.

Tomorrow is good. 6105 I55 N Jackson, MS. 39211

Tell him to coordinate to make sure I'm here.

Just call me on my cell.

Tue, Mar 23, 11:08 AM

Loading the 765 now.

Awesome

Thu, Mar 25, 11:31 AM

Let me know when you know anything!

👍

Car is in the shop and I will

Fri, Mar 26, 3:04 PM

iMessage

11:02

◄ Contacts



Isaac ›

Fri, Mar 26, 3:04 PM

What we looking like?

I talk to the new customer and told him that we don't know yet.

Sorry.  I didn't tell him who had it and where it was.

Somebody did and he called a few times.

Man.  Seriously sorry he's a bother.

Hahaha no worries man. He wasn't that bad.

Mon, Mar 29, 12:05 PM

Good Afternoon.  Just checking in.

Mon, Mar 29, 1:07 PM

Checking wires now. There is something electrical going on with the. We are working with McLaren at this point to see if they have any idea.

You can tell the new guy when you get a chance.

Thank you.  Will do.

  iMessage 

11:02

◀ Contacts



Isaac ›

Tue, Mar 30, 9:06 AM



iMessage

11:02

◄ Contacts

< 

Isaac >



iMessage





Wed, Mar 31, 10:09 AM

I should be able to help you guys and the owner on this one.

Any help would be appreciated!

Wed, Mar 31, 12:55 PM

Let me know details when you get time.

11:03

◀ Contacts

Isaac >



Parts are order. It will be probably Monday before we see them and then it won't take me long to put the car back together.

Thu, Apr 1, 10:02 AM

I thought I was going ro have great news but McLaren just reply back to me that they will not assist on this one. The repairs are about $1,450.00

Ok. Let me get with Chip.  And I'll report back.

Working on that part. Obviously parts are ordered for Monday

Yes

Mon, Apr 5, 11:20 AM

So I got one of the parts here the second one I'm still waiting on it. I tried to get a tracking # but McLaren has been closed since Friday until tomorrow due to the holiday.

I already text the new customer as

  iMessage

11:04

◀ Contacts



Isaac ›

I already text the new customer as well.

Great.  Thanks you.

Tue, Apr 6, 9:56 AM

👍

Si the other part will be here on Thursday according to the tracking #. I already mention this to the buyer as well.

Thu, Apr 8, 7:50 AM

Goood morning.  Let me know.

Part is incorrect. McLaren send the part for a 720 instead of the 765. The 765 has two fuel pumps and the 720 has just one. So of course it would not work.

I love my job!!

Ok.  Just give me an update as you know more

I will

Fri, Apr 9, 4:15 PM

Was that part coming in today? Or Monday?

  iMessage 





◀ Contacts

Isaac ›

Good Morning

Car is running like a dream. I just texted the new owner

Can you talk

👍

Give me about 10 minutes to get a few things done here

I will call you

Wed, Apr 14, 11:10 AM

Delivery by Delivery will pick up today about 1pm. Driver is Eugene

Perfect they already called

Calling you in about 5 to 10 minutes.

Sun, Apr 25, 9:07 AM

Where was that 765 being shipped out to?

Sun, Apr 25, 10:29 AM

👀.
The place where you are thinking.....

Was it Pensilvania? My friend send

iMessage



Perfect they already called

Calling you in about 5 to 10 minutes.

Sun, Apr 25, 9:07 AM

Where was that 765 being shipped out to?

Sun, Apr 25, 10:29 AM

👀.
The place where you are thinking.....

Was it Pensilvania? My friend send me a pic of a car that caught on fire.

Yes. That is the car.
It had less than 8 miles since y'all repaired it. He drove it to the gas pump yesterday for the first time and as soon as gas started going in, there was a loud pop and fire coming out the back. The passenger narrowly escaped.

Delivered

Awesome!! I will call you tomorrow when we get to the office

By the way definitely being sarcastic on the awesome.

   iMessage