**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN FAMILY HOME INSURANCE COMPANY, as Subrogee of Adrian Biesecker, | |
| Plaintiff, | Docket No. 2:21-cv-04016-JDW |
| v. | |
| MCLAREN AUTOMOTIVE, INC., and KRAUSE FAMILY MOTORCARS, LLC, | |
| Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS**
**OF DEFENDANT KRAUSE FAMILY MOTORCARS, LLC**

Pursuant to the Court's Order dated November 17, 2021, Plaintiff, American Family Home Insurance Company as subrogee of Adrian Biesecker, submits this supplemental brief in opposition to the motion to dismiss filed by Defendant Krause Family Motorcars, LLC's ("Krause"), specifically on the issue of this Court's personal jurisdiction over this defendant.

**INTRODUCTION**

As part of its November 17 Order, the Court granted Plaintiff's request for jurisdictional discovery. Krause's responses to Plaintiff's discovery show that the company has had extensive commercial and financial contacts with Pennsylvania spanning its entire five-and-half-year existence.[1] Krause sells and delivers millions of dollars worth of luxury cars directly to Pennsylvania residents, finances installment auto sales to Pennsylvania buyers, retains security

---

[1] Krause Family Motorcars, LLC, was formed on August 1, 2016. *See* Exhibit 4 to the concurrently-filed Declaration of Clint McCord at p. 1 (Krause answer to Interrogatory No. 1). Krause conducted all relevant business under the names "Motorcars of Atlanta" and "Motorcars of Georgia." *See* McCord Ex. 2.

interests in vehicles for years after they are delivered to Pennsylvania, enters into long-term vehicle service contracts with Pennsylvania buyers, and requires buyers to obtain insurance policies to protect its security interests in the Pennsylvania vehicles, with loss payments directed to its Pennsylvania bank branch.  Krause even requires Pennsylvania residents to grant it a broad Power of Attorney that authorizes it to sign documents binding Pennsylvania residents and take legal action in Pennsylvania courts (such as property and lien foreclosure actions).  As shown herein, Krause's contacts with Pennsylvania are of such broad extent and continuing nature as to confer personal jurisdiction over it, both general and specific.

## **ARGUMENT**

The foundation for the exercise of personal jurisdiction over a nonresident defendant is the Supreme Court's decision in *International Shoe Co. v. Washington*, in which the court stated:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.  The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945).

The court expanded on that foundation in subsequent decisions:

> [S]ince our pathmarking opinion in [*International Shoe*], the touchstone of the personal-jurisdiction analysis has been the question whether a defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" For decades this Court has considered that question through two different jurisdictional frames: "general" and "specific" jurisdiction.

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785 (2017) (citations omitted).

## II.   **THE COURT HAS GENERAL JURISDICTION OVER KRAUSE.**

The Pennsylvania statute that governs general jurisdiction over a nonresident corporate

defendant is 42 Pa. Cons. Stat. § 5301(a)(2)(iii), which establishes such jurisdiction where a corporation carries on "a continuous and systematic part of its general business within this Commonwealth." *See also Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3rd Cir. 1987) (stating that general jurisdiction under the Fourteenth Amendment exists where a defendant "has continuous and systematic contacts with the forum state").

Krause's myriad, multi-year, ongoing business with Pennsylvania residents and banks certainly constitute "continuous and systematic" business within the Commonwealth sufficient for general jurisdiction:

1. **Krause sells millions of dollars of luxury cars directly to Pennsylvania residents and delivers cars directly to Pennsylvania buyers using its own transport vehicles.**

Attached as Exhibit 1 to the concurrently-filed Declaration of Clinton McCord is a sales summary provided by Krause's counsel coupled with an email addendum provided by counsel. Exhibit 1 shows that, in the five-and-a-half years since its formation in 2016, Krause has sold over $3.5 million in luxury automobiles to Pennsylvania residents. And its sales into Pennsylvania are accelerating – over half of those sales ($1,863,254) occurred in the last two years, with its biggest year in 2021 ($1,030,754). McCord Ex. 1.

After it sells the cars to Pennsylvania buyers, Krause delivers some of those vehicles directly to the buyers in Pennsylvania using its own transport vehicles.[2]

2. **Krause loans money to Pennsylvania residents to finance their auto purchases, and retains a security interest in the vehicles for years after they are delivered to the Pennsylvania buyer.**

Exhibit 2 to the McCord Declaration contains a "Retail Installment Sale Contract –

---

[2] *See* Exhibit 2 to the McCord Declaration (consisting of documents provided by Krause's counsel which relate to the sale of a $175,500 Audi coupe by Krause to a Pennsylvania resident on May 23, 2020) at KRAUSE_0098.

Simple Finance Charge" by which Krause (through its Motorcars of Georgia dealership) acts as a "Seller-Creditor" and finances the purchase of a $175,000 Audi coupe by a Pennsylvania buyer over a period of five years (60 months), with interest.  *See* McCord Ex. 2 at KRAUSE_0101.  *See also* McCord Ex. 3 (Krause finance agreement for a $400,000 Rolls-Royce).

As a condition of its loans to Pennsylvania buyers, Krause retains a security interest in the financed vehicles during the life of the loan (which lasts for years after the vehicles are delivered to residents in Pennsylvania).  McCord Ex. 2 at KRAUSE_0101; McCord Ex. 3 at KRAUSE_0129.

> **3.   Krause enters into long-term vehicle service and insurance placement contracts with Pennsylvania residents.**

As part of its auto sales into Pennsylvania, Krause offers extended 5-year warranties and service contracts on vehicles for years after they are delivered to the Pennsylvania buyer.  *See* McCord Ex. 2 at KRAUSE_0099 and KRAUSE_0100.  On sales that it finances, Krause also requires that the buyer procure an insurance policy for its benefit, to cover the financed automobile and protect Krause's interests for the duration of the loan.  *See* McCord Ex. 2 at KRAUSE_0094.

> **4.   Krause is the beneficiary of insurance procured by Pennsylvania agents with loss payments going to a Pennsylvania branch of Krause's bank.**

The insurance policies that Krause contractually obligates Pennsylvania buyers to obtain for its benefit (to protect Krause's security interest in financed vehicles) can be procured through Pennsylvania agents.  *See* McCord Ex. 2 at KRAUSE_0094.  And indemnity payments have been directed to a Pennsylvania branch of Krause's bank (a PNC Bank branch in Pittsburgh).  *Id.*

> **5.   Krause forces Pennsylvania buyers to appoint the company as their Attorney-in-Fact as a condition of providing an auto loan.**

Please see McCord Exhibit 3 at KRAUSE_0132, which contains a "Power of Attorney" provision in the Pennsylvania buyer's "Motor Vehicle Installment Contract" for a $400,000 loan

on a 2021 Rolls-Royce.  The Power of Attorney grants Krause broad powers to act on behalf of the Pennsylvania resident, including the right to reclaim full interest in the Pennsylvania vehicle (in a Pennsylvania court) as part of a repossession process.

### 6.   Krause's bank is headquartered in Pennsylvania.

Krause banks with PNC.  *See* McCord Ex. 4 at p. 2 (Krause's answer to Interrogatory No. 12).  PNC is headquartered in Pittsburgh, Pennsylvania.  (*See* PNC Corporate Profile at: https://www.pnc.com/content/dam/pnc-com/pdf/aboutpnc/Fact%20Sheets/CorporateProfile.pdf).

The Third Circuit case of *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, cited above, is squarely on point on the issue of this Court's general jurisdiction over Krause.  *Provident* addressed the Eastern District of Pennsylvania's general jurisdiction over a nonresident loan association located in California (California Federal).  The Third Circuit affirmed the trial court's finding of general jurisdiction over California Federal, even though it had no offices or employees in Pennsylvania and did not advertise in the state, based on the fact that some of its depositors resided in Pennsylvania and three financial institutions in Pennsylvania serviced some of its loans.  *Provident*, 819 F.2d at 436.  Although the relative amount of California Federal's business in Pennsylvania was very small (only .066% of its depositors and 0.71% of its loans), in finding jurisdiction over the lender, the *Provident* court focused on "the nature of California Federal's contacts with Pennsylvania..."  *Id.* at 438.  The court found that those contacts, while comprising a small percentage of its business, were of a continuing nature and particular type that were central to the defendant's operations — "the bread and butter of its daily business."  *Id.*

The reasoning of the Third Circuit in *Provident* applies to this case.  The contacts between Krause and Pennsylvania outlined above (selling, financing, and delivering luxury cars in the state, entering into long-term contracts with state residents, benefitting from insurance

policies and security interests that are anchored in the state, obtaining power of attorney) are coextensive with Krause's overall business as a purveyor of luxury automobiles. Krause even acts as a "lending institution" in the course of that business (just like the *Provident* defendant), and lends millions of dollars into Pennsylvania (for which it is collecting interest each and every day from Pennsylvania residents). On that point, importantly, the *Provident* relied on the fact that, as a lending institution, California Federal "***can become*** the owner of a loan secured by property in Pennsylvania..." *Id*. (emphasis added). In this case, Krause, as a lending institution, ***is*** the owner of loans secured by property (luxury automobiles) in Pennsylvania.

Presumably, Krause will argue that its sales in Pennsylvania are but a small percentage of its total sales. Millions of dollars in auto sales and finance agreements is not small potatoes, regardless of the percentage. More importantly, as the *Provident* court found, it is not the relative *amount* of business in the forum state that is important for determining jurisdiction, it is the *nature* of that business. And the nature of Krause's business binds it tightly to Pennsylvania residents, insurance agents, and financial institutions. Krause's long-term, multi-year, continuing contacts with Pennsylvania are more than sufficient to subject it to general jurisdiction in the state.

Another instructive case is *Lakin v. Prudential Sec.*, 348 F. 3d 704 (8th Cir. 2003). In that decision, the Eighth Circuit cited the *Provident* decision extensively in reversing the trial court's denial of general jurisdiction over a nonresident bank which had its only office, coincidentally, in Georgia. In reaching its ruling, the *Lakin* court primarily relied on the fact that the defendant extended lines of credit to forum residents (just like Krause does), which were secured by property in the forum state (just like Krause's loans are). *Lakin*, 348 F. 3d at 708-709. As the court pointed out, lines of credit of the type provided by the Lakin defendant (and Krause) "are not single point-of-sale transactions. Rather, the terms of ***these loans are typically***

*measured in months and years—creating continuous long-term contracts* with the [forum state]." *Id*. at 708 (emphasis added).  Quoting *Provident*, the *Lakin* court emphasized the "nature" of the defendant's transactions, and the fact that they were "central to the conduct of its business." *Id*. at 709.

The *Lakin* court also relied on the fact that the defendant bank hosted a website (in Georgia, like Krause) that was "interactive" and allowed forum residents to actively conduct business with the nonresident defendant from their forum residence. *Id*. at 710-711.  In this case, being that Krause claims it does not advertise in Pennsylvania, it presumably does a large percentage of its Pennsylvania-based business through its website.  Like the *Lakin* defendant's website, Krause's website is very interactive; customers can shop, purchase, and apply for financing (*see* https://motorcarsofatlanta.com/).  Based on the "nature" of Krause's continuous and systematic contacts with Pennsylvania, which encompass every aspect of its business, there is little doubt that the *Provident* and *Lakin* courts would find general jurisdiction over Krause if they were sitting in this case.

It is worth noting here that the *Provident* court highlighted the fact that the defendant bank refused discovery requests "to provide adequate information concerning its borrowing and lending activity in Pennsylvania..." *Provident*, 819 F. 2d at 438.  The trial court construed that refusal as "an admission that it has engaged in continuous banking activity in Pennsylvania." *Id*.  In this case, Plaintiff asked Krause (through an interrogatory) about the extent of Krause's banking in Pennsylvania (including dates).  After initially refusing to provide <u>any</u> information, in an amended answer, Krause simply stated:  "Defendant does business with PNC bank from its local branch in Atlanta, Georgia." *See* McCord Ex. 4 at p. 2 (Krause response to Interrogatory No. 12).  As we know from its other discovery, Krause does not *only* do business with the Atlanta branch of PNC (*see* McCord Exhibit 2 at KRAUSE_0094 – authorizing PNC's Pittsburgh

branch to accept loss payments on insurance policies protecting Krause's security interest).

Therefore, Krause's refusal to provide the details or dates of its banking in Pennsylvania should

be construed as an admission that it is engaged in continuous banking activity in Pennsylvania

(as the *Provident* defendant's similar refusal was so construed).

## I.      THE COURT HAS SPECIFIC JURISDICTION OVER KRAUSE.

To be subject to specific jurisdiction, a defendant "must take some act by which it

purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*

*Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (citation omitted).

The Supreme Court's recent decision in *Ford Motor Co.* addressed the same issue present in this

case, namely, the exercise of specific personal jurisdiction over a nonresident defendant for

claims arising from malfunctioning automobiles that the defendant had not introduced to a forum

state.  The cars in *Ford* had been sold in other states and subsequently made their way into the

forum states after the fact, through no direct involvement of Ford.  The Supreme Court held that,

because Ford actively cultivated and exploited a market for its cars in the forum states, it could

be sued for injuries to forum plaintiffs that were caused by cars that had been sold in other states:

"[W]hen a corporation has ***continuously and deliberately exploited a State's market, it must***

***reasonably anticipate being haled into that State's courts to defend actions based on products***

***causing injury there***." *Id*. at 1027 (emphasis added; citation omitted).

In this case, as outlined above, for the past five-plus years, Krause has "continuously and

deliberately exploited" Pennsylvania's luxury automobile market.  That includes the sale and

shipment of McLaren automobiles to Pennsylvania (the same make of automobile that burst into

flames at a Pennsylvania gas station in this case).  *See* McCord Ex. 1.

Krause's extensive business contacts (and contracts) with (and within) Pennsylvania

certainly satisfy *Ford Motor Co.*'s  "purposeful availment" standard:

8

> The contacts must be the defendant's own choice and not random, isolated, or fortuitous.  They must show that the defendant deliberately reached out beyond its home—by, for example, ***exploiting a market in the forum State or entering a contractual relationship centered there***.

*Ford Motor Co.*, 141 S. Ct. at 1025 (emphasis added; citations and marks omitted).

In finding specific jurisdiction over Ford for injuries caused by autos that it had not sold in the forum states, the Supreme Court rejected the same argument being made by Krause in this case, namely, that there is no specific jurisdiction because Krause was not responsible for selling or shipping the specific vehicle that malfunctioned into Pennsylvania.  (*See* Krause Memorandum, Dkt. No. 3-2, at pp. 5-6.)  As the *Ford* court stated:  "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."  *Id.*  All that is required is that "the suit arise out of *or relate to* the defendant's contacts with the forum."  *Id*. (emphasis in original).  And Krause has offered no support for any assertion that the malfunctioning McLaren in this case does not "relate to" its business of selling and shipping McLarens into Pennsylvania, and (as it did in this case) performing service work on the vehicles before allowing them to pass into the state.

In *Ford*, even though the defendant had no knowledge that the subject autos were going to the forum states, and had no direct hand in sending them to those states, the court still found jurisdiction.  By contrast, in this case, Krause ***did*** know that the subject vehicle was going to the forum state, and it ***did*** have a direct hand in sending it there (by making repairs to it before sending it on its way to Pennsylvania).  Accordingly, the case for specific jurisdiction here is even stronger than it was in *Ford*.  And the same standard applies under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. § 5322.  *See Hammons v. Ethicon, Inc.*, 240 A. 3d 537, 561 (2020) ("We are also guided by the clear legislative expression in Subsection 5322(b) to apply Pennsylvania's jurisdiction 'to the fullest extent allowed under the Constitution of the United

States.")  By virtue of its extensive exploitation of the luxury car market in Pennsylvania (including for the subject vehicle – McLaren), there is specific personal jurisdiction over Krause in this case for Plaintiff's claim arising from a malfunctioning luxury car (a McLaren).

In closing it is worth nothing that, in the course of conducting business in Pennsylvania, Krause enjoys the protection of Pennsylvania's legal system.  For instance (under its Power of Attorney) if it wanted to foreclose on property (an auto) that secured one of its loans, it would be allowed to do so in a Pennsylvania court (indeed, would likely *need* to do so in a Pennsylvania court given the location of the property in the state).  It is therefore only reasonable and fair that Krause be *subject* to suit in the state, and subject to this court's jurisdiction.

WHEREFORE, for the reasons herein and in Plaintiff's original opposition brief, Plaintiff American Family Home Insurance Company as subrogee of Adrian Biesecker respectfully requests that the Court deny Defendant Krause Family Motorcars, LLC's motion to dismiss.

Respectfully submitted,

PLAINTIFF AMERICAN HOME INSURANCE COMPANY
By its attorneys,

/s/ Clinton J. McCord

Patrick C. Timoney
**Devine Timoney Law Group**
Veva 14 Suite 404
1777 Sentry Parkway West
Blue Bell, PA 19422
Phone: 610-400-1970
ptimoney@devinetimoney.com

Marie Cheung-Truslow (admitted *pro hac vice*)
Clinton J. McCord (admitted *pro hac vice*)
**Law Offices of Marie Cheung-Truslow**
Main Number: (617) 777-4748
Fax Number: (617) 553-1940
marie@cheungtruslowlaw.com
clint@cheungtruslowlaw.com